DETERMINED IN THE

# FIRST DEPARTMENT

AT

# GENERAL TERM.

## January, 1893.

---

C. ELLIOTT MINOR, as Assignee for the Benefit of Creditors of P. W. GALLAUDET & CO., Plaintiff, v. CORNELIA A. BEVERIDGE, Defendant.

*Broker and customer — a demand for more margin is necessary, before stocks bought upon a margin can be sold out.*

Cornelia A. Beveridge, who was dealing in stocks upon a margin through her brokers, P. W. Gallaudet & Co., had sufficient margin with them for her purchases until there was a fall in prices in the stock market, whereupon the brokers sold out her stock without notice to her, and without any demand for additional margin.

This action on the part of the brokers resulted in a loss, the amount of which the assignee of the brokers attempted to collect from her by action.

Upon an appeal from an order dismissing the complaint:

*Held,* that such dismissal was proper.

That the brokers should have notified the customer, demanded more margin, and have given her a reasonable time in which to furnish it.

That their contract with her was entire, and a failure to carry the stock until they had placed her in default was a breach of the entire contract.

That where they had failed to perform their duty to their customer, they and their assignee were precluded from asserting any claim which arose out of the contract.

MOTION for a new trial by the plaintiff C. Elliott Minor, as assignee for the benefit of creditors of P. W. Gallaudet & Co., upon exceptions taken upon a trial of the action had at the New York Circuit

before the court and a jury, at which the complaint was dismissed and the exceptions were directed to be heard in the first instance at General Term, judgment to be in the meantime suspended.

*George W. Wingate*, for the motion.

*E. L. Bushe*, opposed.

VAN BRUNT, P. J.:

This action was brought by the plaintiff, as assignee, for the benefit of the creditors of the late firm of Gallaudet & Co., who had been bankers and brokers in stocks, bonds and other securities, against the defendant, who had been a customer of said firm. Certain stock having been purchased for the defendant by said Gallaudet & Co.; it was carried for a long period of time. In June, 1886, pursuant to a request then made by Gallaudet & Co., the defendant deposited a certificate of fifty shares of Pacific Mail stock as margin on the account. A son of the defendant was, throughout this period, an employee of said firm, and said employment continued up to the time of the failure. In December, 1888, the defendant transferred a stock dealing account which she then had with other brokers to Gallaudet & Co. This account was, at all times, kept fully margined up, and there was sufficient margin up to the tenth of November, on which day there was a depreciation in the market, and Gallaudet & Co. sold out all the defendant's stocks. No demand was made upon the defendant to supply margins, and no notice was given to her of the intention to sell, but one of the members of the firm testified that he notified the defendant's son that he should have to sell out the stocks of the mother, the market being at this time very ragged, very weak and panicky, and that he sold the stocks right away. After the sale notices were offered to the defendant's son at his office which he refused to accept, but no notice was ever sent to the defendant. This suit was subsequently brought to recover a balance claimed to have been created by this sale against the defendant. And proof was offered tending to show that all the stocks could have been purchased at prices below the prices at which they were sold within a week.

At the close of the plaintiff's case, a motion was made to dismiss the complaint on the ground that Gallaudet & Co. had failed to

perform their duty to the defendant, as brokers, in having sold out her stocks without notice to her, and without demand for further margin, and they were consequently precluded from maintaining any claims. This motion was granted, and the ruling of the court excepted to, and the exceptions ordered to be heard in the first instance at the General Term.

It is difficult and we will not undertake to reconcile the conflicting decisions which have been made by the court of last resort upon the relative rights and duties of stock-brokers and their customers. If we are to follow the deductions claimed to be drawn from the statements contained in some of the decisions, we should be compelled to hold, where there is a contract to carry stocks upon a margin, that a sale of such stocks without notice to a customer is not a breach of such contract, the relation of the parties being simply that of pledgor and pledgee, and that, for a conversion of the pledge, the pledgee is only liable for the damages sustained by the pledgor by such conversion, but whether they would equal the amount of the claim of the pledgee would depend upon the facts developed. But we think that this claim is not directly supported by the case cited ; and the implied agreement from the contract to carry upon a margin is also lost sight of. Where there is a contract to carry stocks upon a margin, an agreement, as part of the contract, is implied that such stocks shall not be sold in case there is danger of the exhaustion of the margin until additional margins shall be applied for and a reasonable time afforded for the furnishing of the same. Therefore, where the relations of the parties are such as they were in the case at bar, the sale of stock without notice is a breach upon the part of the broker of the contract under which the stocks were purchased ; and one of the essential elements of recovery in every contract is an allegation upon the part of the party seeking to recover that he has fully performed the contract upon his part.

To hold that, under such circumstances, the broker is necessarily entitled to recover any advances that he may have made, and that in case of a sale without authority, the customer must go into the market and repurchase, if it is possible to do so, and thereby save himself from the losses arising from such unauthorized sale, is to lose sight entirely of the fact that such a construction of the law would give the party a right to recover upon a contract which he has him-

self violated. In one of the cases (that of *Capron* v. *Thompson*, 86 N. Y., 418) it was undoubtedly held that a sale of stock which had been bought upon a margin without notice to the customer did not constitute a failure to perform a condition precedent, but was a breach of a condition subsequent to the purchase. But it seems to me that this is a mis-statement in reference to the relations of the parties. The contract in regard to the carrying of the stock is an entire contract, and a failure to carry until the customer has been placed in default is a breach of the entire contract, and the broker, under such circumstances, is not in a position to establish a condition of affairs which entitles him to any recovery arising out of anything which has been done in connection with that contract. A customer having a contract with a broker to purchase and carry stocks upon a margin cannot be called upon, after the broker has violated his contract, and sold his stocks without notice, to go into the street and endeavor to make a similar contract with other brokers in order to protect himself from loss. It might be that the condition of the market would render it impossible for the customer to make such a contract at that particular time; and thus he is placed at a disadvantage by the broker inducing him to enter into the adventure because of his promise and agreement to carry the stock upon a margin, and when he violates that agreement the customer must look out for himself and assume all the risks.

We do not think that this can be the true construction of the relation which arises between the broker and the customer from a contract to buy and carry upon a margin. The case of *Gillett* v. *Whiting* (120 N. Y., 403) recognizes this principle, and so does the case of *Rogers* v. *Wiley* (131 N. Y., 527). This latter was a case of a short sale. The stock having advanced, the defendants agreed to carry the stock until the plaintiff could get out all right. Without any notice to the plaintiff the defendants bought the stock in at a price which about exhausted the margin. Upon receiving the notice of the purchase, the plaintiff repudiated it. The market subsequently declined, and the plaintiff directed the defendants to buy to cover the short sale and to sell the securities held as margin, and to account. This they declined to do, and the court held that the plaintiff was entitled to recover for a breach of that contract; thus recognizing the fact that the duty of the broker continues to the end, and he

can terminate his obligations only by fulfilling his duties to his customers. Therefore, it seems to follow that where a purchase of stock is made upon a margin, and where, from the facts, there is an implied agreement to carry upon a margin, and the broker sells in violation of this agreement, he violates the contract which governs the relations between himself and his customers, and he ought not to be allowed to recover upon the implied promise to pay for the stock purchased, which is part. and parcel of the same contract to carry.

The exceptions should be overruled and judgment ordered for defendant, with costs.

O'BRIEN and FOLLETT, JJ., concurred.

Exceptions overruled and judgment ordered for defendant, with costs.